**UNITED STATES, Appellee,**

**v.**

**Edwin FORTES, aka Charles Brookshire, Defendant, Appellant.**

**No. 96–1981.**

United States Court of Appeals, First Circuit.

Heard July 29, 1997.

Decided Jan. 14, 1998.

As Modified April 28, 1998.

Robert Godfrey, Hingham, MA, by appointment of the Court, for appellant.

Timothy Q. Feeley, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney and Antoinette E.M. Leoney, Assistant United States Attorney, Boston, MA, were on brief, for appellee.

Before SELYA and LYNCH, Circuit Judges, and POLLAK,* Senior District Judge.

POLLAK, Senior District Judge.

This appeal challenges the conviction and the subsequent sentence of Edwin Fortes (a.k.a. Charles Brookshire). A four-count indictment, handed up on December 6, 1995, charged that on January 13, 1994 Fortes (1) was a felon in possession of firearms and ammunition (18 U.S.C. § 922(g)(1)); (2) possessed a firearm with an obliterated serial number (18 U.S.C. § 922(k)); (3) possessed cocaine with intent to distribute (21 U.S.C. § 841(a)(1)); and (4) used and carried firearms during and in connection with the co-

* Of the Eastern District of Pennsylvania, sitting by designation.

caine possession alleged in count 3 (18 U.S.C. § 924(c)(1)). Prior to trial the fourth count was dropped. In May of 1996, having waived a jury trial, Fortes was tried to the bench on counts 1, 2 and 3. After a week's trial Fortes was found guilty on all three counts.

Fortes was sentenced in July of 1996. Finding that under count 1—felon in possession of firearms and ammunition—Fortes was subject to enhanced penalties pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), and the armed career criminal sentencing guideline, U.S.S.G. § 4B1.4, the district court sentenced Fortes to a prison term of 262 months on count 1. The district court also imposed concurrent sentences of 60 months on count 2 and 262 months on count 3.

On appeal Fortes challenges several aspects of his conviction and sentence. Two of the issues he raises merit discussion. To these we now turn.

### I.

Fortes argues that findings made by the district court in connection with the conviction under count 3—possession of cocaine with intent to distribute—are incompatible with a verdict of guilty. Fortes' precise contention is that certain of the district court's findings are directly at odds with a conclusion that, within the intendment of 21 U.S.C. § 841(a)(1), he "knowingly" possessed the particular units of cocaine that he was charged with possessing.

The cocaine in question consisted of nine "jums"—wrapped packages of crack. Law enforcement officers executing a search war-

rant on January 13, 1994, at Fortes' aunt's apartment at 5 Cardington Street in the Roxbury section of Boston, found the jums on a bureau located in a guest room frequented by Fortes.[1] The search marked the culmination of several months of law enforcement efforts inquiring into drug-and-firearms-related activities of Fortes and others at the Roxbury apartment. These law enforcement efforts included two controlled drug transactions in which cocaine was sold at the Roxbury apartment to a confidential informant: in the first transaction, in September of 1993, Fortes was the seller; in the second transaction, in early January of 1994, a Fortes confederate was the seller.

The district court made extended findings with respect to the three counts of conviction—felon in possession of firearms and ammunition; possession of a firearm with an obliterated serial number; and possession of cocaine with intent to distribute. In order fairly to assess Fortes' challenge to his conviction on the cocaine-possession count it will be helpful to quote the entirety of the district court's findings on that count. To place those findings in proper context, the concluding portions of the district court's preceding discussion—the discussion of the two firearms counts—will also be set forth:

So with respect to Count 1, I find that the defendant did have constructive possession of the items alleged in Count 1.

Now, let me just say that possession may well have been joint. I'm not called upon to decide fully whether it was joint. It's sufficient that the defendant has possession. The evidence does indicate that it was joint with others, perhaps, because

---

1. The district court's findings with respect to Fortes' connection with the guest room in his aunt's apartment were these:

The execution of the search warrant yielded not only the evidence of the contraband itself but evidence that established, I think powerfully, the defendant's presence in the premises on the first floor of Cardington Street and his ability and intention to exercise control over items in what has been variously called the guest room or Chucky's room, that is, the room on the right as you enter the building.

In particular, there was a large number of defendant's personal papers. They weren't simply historical papers, but they were current operational papers.

Among the papers were his current—I think the most recent one was in December, report to his probation officer which included copies of his paychecks earned through the month of December and, I think, in fact, into January, indicating that even in January 1994, defendant had a present and ongoing connection with that room by treating it as a repository for papers that were of some importance to him.

I may note that the defendant in his probation reports or reports to the probation supervising probation officer reported that his residence was 5 Cardington Street.

other people came and went at the same time.

And, of course, question of ownership is not at issue. Possession is to be determined apart from ownership, some preference as to whose guns they were and that is, I think, legally beside the point.

With respect to Count 2, Count 2 relates to the weapon with the obliterated serial number. That was the Interdynamic semiautomatic pistol. It was found in the right-hand bedroom and is one of the items that I conclude the defendant constructively possessed knowingly.

I reach essentially similar conclusion [*sic*] with respect to Count 3 which alleges the defendant possessed a controlled substance knowingly with the intent to distribute it.

First of all, I think it's clear that it's a controlled substance. I've read the report of one of the items. I don't know if it matters the other [*sic*] weren't analyzed, whether the one is cocaine base, I don't think it matters the others are not. I don't think it matters.

Applying the same principles of possession, I would conclude from defendant's participation in a drug sale in September that he knew that was a drug-selling place and that he intended to participate in it, intended to possess the drugs that were available for sale within the premises from time to time; and that as a willing, knowing participant in that conspiracy to sell drugs as well as firearms, the defendant knew that drugs, particularly cocaine base, would be available and would be sold.

And I find further that he had the intention to exercise control over—perhaps jointly with others—over such drugs as were in the apartment for sale at any given time through the date of the indictment, date alleged in the indictment. I'm sorry, through the date alleged in the Count 3 in the indictment.

I may say that I do not find that the government has proved beyond a reasonable doubt that the defendant knew of these specific nine items being on top of the bureau at the particular time.

There's not evidence that the defendant was there in such a time—in proximity to the search that he knew specifically that there were nine individually wrapped jums on top of the bureau.

I don't think that is necessary because of my conclusion that he knew of the presence of crack for sale in the premises generally and intended to possess that which was present.

But to the extent that may make any difference legally, I mention that; and I'm not convinced that he knew of those specific items. And I distinguish those from the firearms, for example, because I think much more likelihood, likely that that was a transitory condition, that nine individually wrapped jum doses would not remain very long on the top of a bureau whereas I think firearms stored in safes and behind—in briefcases behind cabinets, so on, so forth, were there for longer term storage.

But it's not clear who in the events of the day may have deposited those individual packages and for how long they were there. I could not find the defendant knew of those specifically, but I don't think that's necessary to the proof.

I think that it's sufficient for the government to have proved participation in the conspiracy which was the sale of cocaine, cocaine base, knowing that there would be a supply and that intended to participate in that by possessing and exercising control over the supply as it may been from time to time.

I find further that possession by the defendant was with the intent to distribute. I find from all the evidence that sales was [*sic*] going on, including his own participation in the sale and in addition from the evidence the defendant himself did not use cocaine or cocaine base so that the element—I find the government has proved possession with intention to distribute.

Fortes argues that the key to the district court's finding that he knowingly possessed cocaine was "that as a willing, knowing participant in that conspiracy to sell drugs as well as firearms, the defendant knew that drugs, particularly cocaine base,

4

would be available and would be sold." Fortes goes on to point out that he was not charged with participation in a conspiracy. In arguing that the district court's characterization of him as a conspirator undercuts the district court's verdict on the possession count, Fortes invokes language of this court in *United States v. Zavala Maldonado*, 23 F.3d 4 (1st Cir.), *cert. denied*, 513 U.S. 975, 115 S.Ct. 451, 130 L.Ed.2d 360 (1994). Defendant Zavala—like Fortes in the case at bar—was charged with possession of cocaine with intent to distribute. And in Zavala's case, we pointed out that, "given that these offenses [conspiracy, and aiding and abetting an attempt] were not charged, it is hardly sufficient to say that *this* record contained evidence to support such a conviction," and we there went on to state that "the conviction for possession can stand only if a reasonable jury could find that Zavala did possess the cocaine within the meaning of 21 U.S.C. § 841." *Id.* at 6.

It is true that here, as in *Zavala Maldonado,* no conspiracy charge was laid against the defendant. Thus here, as there, a charge of possession could not be proved by demonstrating vicarious accountability—i.e., possession by a co-conspirator is not possession by the defendant where the defendant has not been charged with conspiracy. But—as in *Zavala Maldonado,* so here—proof of the defendant's possession rested on the defendant's own conduct, not on that of co-conspir-

ators. To be sure, in the case at bar the district court referred to Fortes' participation in a "conspiracy to sell drugs as well as firearms," but the district court also referred to "defendant's participation in a drug sale in September [of 1993]," a datum from which the district court inferred that Fortes "knew that was a drug-selling place and that he intended to participate in it, intended to possess the drugs that were available for sale within the premises from time to time." Furthermore, the district court noted that execution of the January 13, 1994 search warrant "established, I think powerfully, the defendant's presence in the premises on the first floor of Cardington Street and his ability and intention to exercise control over items in what has been variously called the guest room or Chucky's room." *See* note 1, *supra.* Given the plenitude of these findings, and the fact that crack—like any other drug of a particular kind—is an essentially fungible commodity, the possibility that at the time of the January 13, 1994 search Fortes may not have known "specifically that there were nine individually wrapped jums on top of the bureau" does not destabilize the district court's verdict. What is dispositive is the district court's "conclusion that he [Fortes] knew of the presence of crack for sale in the premises generally and intended to possess that which was present"—a conclusion amply supported by the evidence.[2]

2. Special Agent Joseph Granatino of the Bureau of Alcohol, Tobacco and Firearms testified with respect to two controlled purchases of cocaine at 5 Cardington Street. (1) The first controlled purchase took place on September 22, 1993. The purchaser was a confidential informant whom Agent Granatino supplied with $2000 to enable her to buy cocaine and firearms; Granatino also equipped the confidential informant with an electronic device enabling Granatino to monitor her conversations. In a transaction commencing inside 5 Cardington Street and concluding in a parked car outside 5 Cardington Street, the confidential informant bought cocaine but no firearms from Fortes; after the transaction Granatino and fellow law enforcement officers retrieved $900 and a little more than an ounce of cocaine from the confidential informant. (2) The second controlled purchase took place on January 5, 1994. The purchaser was the confidential informant who had participated in the earlier transaction. When the confidential informant—who this time had been supplied with $1000 to buy cocaine and a handgun—was

brought back to 5 Cardington Street, Granatino, via the monitoring device, heard her knock on the door and then say "Hi. Is Ice [a nickname of Fortes] there?" The response was "No, Ice had to leave 15 minutes ago, but he said you'd be coming by and to give you whatever you needed." The confidential informant then requested one quarter of an ounce of crack and was told that the price would be $250. However, Fortes's confederate did not sell the confidential informant any firearms: "You have to talk to Ice about that." Following the transaction, Granatino and other officers recovered $750 and some crack from the confidential informant.

Gloria Tellis, Fortes's aunt, testified that "once or twice" she saw Fortes weighing, cutting and bagging cocaine in the 5 Cardington Street apartment. She did not recall with any specificity just when she last observed her nephew engaged in this activity, but she agreed that it was approximately in November or December of 1993.

The testimony summarized in the previous two paragraphs provides substantial support for the

## II.

Fortes' conviction on the felon-in-possession-of-firearms-and-ammunition count, under 18 U.S.C. § 922(g)(1), gave rise to a prison sentence on that count of 262 months, substantially in excess of the ten-year maximum term which, pursuant to 18 U.S.C. § 924(a)(2), ordinarily sets a cap on a sentence of incarceration for a violation of § 922(g)(1). This lengthier sentence was based on the district court's determination that, given Fortes' criminal history, the ten-year maximum term was required to be enhanced by virtue of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), and the Act's companion sentencing guideline, U.S.S.G. § 4B1.4. Fortes challenges that determination, raising questions of law with respect to which our review is plenary.

Section 924(e)(1) of Title 18 provides for a minimum term of incarceration of fifteen years without parole for any person "who violates section 922(g) of this title and has three previous convictions by any court ... for a violent felony or a serious drug offense, or both." Although Fortes had, as of the date of his sentencing in this case, a not unimpressive history of prior criminal convictions, he takes exception to the district court's conclusion that more than two of them were "violent felon[ies]" within the meaning of § 924(e)(1).

At sentencing, the district court concluded that five of Fortes' prior convictions—two Massachusetts convictions and three federal convictions—qualified as predicate "violent felon[ies]." The Massachusetts convictions were for assault and battery on a correction-al officer and assault with intent to murder. The federal convictions were for possession of a sawed-off shotgun, conspiracy to commit bank robbery, and armed bank robbery.

In appealing the enhanced sentence, Fortes contends that three of the five convictions counted by the district court as predicate offenses were not "violent felon[ies]" within the meaning of ACCA. The three whose characterization Fortes challenges are the Massachusetts assault and battery conviction and the federal possession of a sawed off shotgun and conspiracy-to-commit-bank-robbery convictions.

Subsequent to Fortes' sentencing, this court, in *United States v. Indelicato,* 97 F.3d 627 (1st Cir.), *cert denied,* —— U.S. ——, 117 S.Ct. 1013, 136 L.Ed.2d 890 (1997), had occasion to consider the status, for the purposes of the federal criminal code, of the Massachusetts offense of assault and battery—an offense which Massachusetts denominates a "misdemeanor," and conviction of which does not entail a loss of civil rights. As the government acknowledges, our *Indelicato* analysis precludes characterizing the Massachusetts offense of assault and battery as a "violent felony" under ACCA. The government insists, however, that the two other offenses called into question by Fortes—possession of a sawed-off shotgun and conspiracy to commit bank robbery—are both "violent felon[ies]." If the government is correct as to either offense, then that offense, taken together with the two offenses whose "violent felony" status Fortes does not dispute—armed bank robbery and assault with intent to murder—would add up to the three predi-

---

district court's "conclusion that he [Fortes] knew of the presence of crack for sale in the premises generally and intended to possess that which was present." This substantial evidentiary support renders inapposite Fortes' reliance on our cautionary observation and guidance in *United States v. Booth,* 111 F.3d 1 (1st Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 204, 139 L.Ed.2d 140 (1997). There the jury was charged that an inference of constructive possession was permissible "when a person knowingly has the power and the intention at a given time of exercising dominion and control over an object *or over the area in which the object is located." Id.* at 2 (emphasis in original). While acknowledging that "knowledge can be inferred in some circumstances from control of the area," we felt there was some risk of over-breadth in the proposition that knowing control of an area might, without more, properly ground an inference of constructive possession of whatever might be in the area. Accordingly, without disturbing the verdict in Booth's case (in which "the jury was told several times that proof of 'knowing' possession was required; [and] the evidence linking appellant to the gun was substantial," *id.*), we cautioned against the utilization of so elastic an instruction in the future. But here the district court did not ground its inference of possession in the fact of knowing control over the area *simpliciter;* the district court found that Fortes was aware of, and intended to participate in possessing, crack that was on the premises and that was available for sale.

caté offenses which bring ACCA into play. But if Fortes is right that neither possession of a sawed-off shotgun nor conspiracy to rob a bank is a "violent felony," sentencing Fortes as an armed career criminal was not authorized.

We turn, then, to a consideration of whether either of these offenses is properly characterizable as a "violent felony" for the purposes of ACCA.

### A. Is possession of a sawed-off shotgun a "violent felony" within the meaning of ACCA?

■ Possession of a sawed-off shotgun is made an offense by the confluence of 26 U.S.C. § 5861(d) and 26 U.S.C. § 5845(a). Section 5861(d) of Title 26 makes it "unlawful for any person ... to receive or possess a firearm which is not registered to him in the National Firearms Registry and Transfer Record." And section 5845(a) instructs that the "term 'firearm' means," inter alia, "a shotgun having a barrel or barrels of less than eighteen inches in length." 26 U.S.C. § 5845(a). As the Ninth Circuit observed in United States v. Dunn, 946 F.2d 615, 621 (9th Cir.), cert. denied, 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991), "[n]ot all firearms must be registered under 26 U.S.C. § 5861(d). Only those firearms must be registered that Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes, such as sawed-off shotguns and hand-grenades. 26 U.S.C. § 5845."

The term "violent felony," as utilized in ACCA, 18 U.S.C. § 924(e)(1), is defined in 18 U.S.C. §. 924(e)(2)(B). The definition is as follows:

[T]he term violent felony means any crime punishable by imprisonment for a term exceeding one year ... that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

In considering whether an offense is a "violent felony" within the meaning of 18 U.S.C. §§ 924(e)(1) and 924(e)(2)(B), courts are, as a general matter, directed to pursue "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990).

It would appear clear from the statutory texts that possession of a sawed-off shotgun—or, indeed, possession of any "firearm which is not registered to [the accused] in the National Firearms Registry and Transfer Record," 26 U.S.C. § 5861(d)—is not an offense which "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). What cannot be determined solely by reading the statutory texts is whether possession of a sawed-off shotgun "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

In arguing that possession of a sawed-off shotgun, in contravention of 26 U.S.C. § 5861(d), is not an offense that falls within the purview of § 924(e)(2)(B)(ii), Fortes relies on United States v. Doe, 960 F.2d 221 (1st Cir.1992). In Doe we held that possession of a firearm by a felon, in contravention of 18 U.S.C. § 922(g)(1), was not a § 924(e)(2)(B)(ii) offense. Since possession is the defining criminal act both of § 5861(d) and of § 922(g)(1), Fortes contends that "Doe controls and dictates the conclusion that [possession of a sawed-off shotgun] does not qualify as a 'violent [felony]'."

Our holding in Doe was based on several considerations. The concluding consideration built upon the position taken by the Sentencing Commission in a 1991 amendment to the commentary governing the career offender guidelines, U.S.S.G. §§ 4B1.1 and 4B1.2, the close guideline analogues of 18 U.S.C. § 924(e). We said this:

Fourth, the United States Sentencing Commission, following a statutory instruction, 28 U.S.C. § 994(a), has written Guidelines with enhancements for those violent offenders with two prior convictions for

"crimes of violence." U.S.S.G. § 4B1.1. In defining the words "crime of violence," the Guidelines use the very language now before us, namely the words "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii). The Commission has recently amended its commentary to make clear that these words do *"not include the offense of unlawful possession of a firearm by a felon."* U.S.S.G. § 4B1.2, comment. (n.2)(emphasis added). The Commission, which collects detailed sentencing data on virtually every federal criminal case, is better able than any individual court to make an informed judgment about the relation between simple unlawful gun possession and the likelihood of accompanying violence. For this reason, and because uniform interpretation of similar language is in itself desirable, we believe we should give some legal weight to the Commission's determination.

*Doe,* 960 F.2d at 225.

The Sentencing Commission has not issued a similar amendment concerning possession of a sawed-off shotgun, or such other firearms as a silencer or a machine gun whose possession is also proscribed by § 5861(d) (in combination with the definitional provision, 26 U.S.C. § 5845(a)). The reasonable—indeed, very substantial—difference between possession of a generic "firearm" and possession of one of the specialized weapons singled-out for particularized treatment by 26 U.S.C. §§ 5845(a) and 5861(d) is illustrated by the Ninth Circuit's decision in *United States v. Huffhines,* 967 F.2d 314 (9th Cir. 1992). There the court held that a 1989 Sentencing Commission amendment to U.S.S.G. § 4B1.2 (an amendment adopted two years prior to the Sentencing Commission's commentary amendment discussed by this court in *Doe* ) precluded characterizing felon-in-possession-of-a-firearm as a "crime of violence" within the meaning of U.S.S.G. §§ 4B1.1 and 4B1.2. *See United States v. Sahakian,* 965 F.2d 740 (9th Cir.1992); *cf. United States v. O'Neal,* 937 F.2d 1369 (9th Cir.1990). But the *Huffhines* court, reaffirming the explication of §§ 5845(a) and 5861(d) announced in *United States v. Dunn, supra* (possession of an unregistered firearm—in that instance, a sawed-off shotgun—

is a "crime of violence" for purposes of U.S.S.G. § 4B1.1), also held that possession of a silencer is a "crime of violence" within the meaning of U.S.S.G. §§ 4B1.1 and 4B1.2. The Ninth Circuit's *Huffhines* analysis merits quotation:

> The crime of possession of a firearm silencer does not have as an element the use, attempted use or threatened use of physical force required by section 4B1.2(1)(i). *See* Tex. Penal Code Ann. § 46.06(a)(4) (West 1989 & Supp.1992). Thus, in order for the offense to be a crime of violence, it must "involve[ ] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii).
>
> The unlawful possession of a silencer presents such a risk. In *United States v. Dunn,* 946 F.2d 615, 620–21 (9th Cir.), *cert. denied,* 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991), we held that possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) constituted a crime of violence for purposes of section 4B1.1. We noted that, under 26 U.S.C. § 5861(d), not all firearms must be registered, only those that Congress found to be inherently dangerous and lacking in lawful purposes, such as sawed-off shotguns and grenades. We reasoned that the possession of an unregistered firearm of the kind defined in section 5845 involved a blatant disregard of the law and a substantial risk of improper physical force. *Id.* at 621.
>
> This reasoning also applies to the unlawful possession of a silencer. A silencer is specifically listed in section 5845's definition of "firearm." 26 U.S.C. § 5845(a)(7). Like a sawed-off shotgun and other firearms of the kind enumerated in that section, a silencer is practically of no use except for a criminal purpose.

*Huffhines,* 967 F.2d at 320–321.

A year after *Huffhines,* the Ninth Circuit reaffirmed the *Huffhines* and *Dunn* analysis of the guidelines term "crime of violence" in *United States v. Hayes,* 7 F.3d, 144 (9th Cir.1993), *cert. denied,* 511 U.S. 1020, 114 S.Ct. 1403, 128 L.Ed.2d 76 (1994), a case

involving a sawed-off shotgun.[3]

In *Doe* we looked to the jurisprudence attendant on the career offender guidelines, U.S.S.G. §§ 4B1.1 and 4B1.2, for assistance in the construction of identical language in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B). We do so again today. We hold that possession of a sawed-off shotgun is a "violent felony" within the meaning of ACCA.

### B. *Fortes' ACCA sentence was warranted*

Since Fortes' prior conviction for possession of a sawed-off shotgun was a "violent felony" for the purposes of ACCA, that conviction, together with Fortes' prior convictions for assault with intent to murder and for armed bank robbery, added up to three predicate "violent felon[ies]," thereby subjecting Fortes to the enhanced sentence scheme prescribed by ACCA for armed career criminals. Accordingly, Fortes' 262–month sentence on count 1 was warranted.[4]

### III.

We have considered, and find without merit, Fortes' other contentions: that the district court erred in (1) not granting a continuance to enable Fortes to locate and call as a witness a government confidential informant, (2) admitting in evidence the out-of-court declaration of one found to be a co-conspirator, and (3) determining that Fortes "possessed [a] firearm ... in connection with a

... controlled substance offense" within the meaning of U.S.S.G. § 4B1.4(b)(3) and § 4B1.4(c)(3) in calculating Fortes' offense level and criminal history category.

#### Conclusion

For the foregoing reasons Fortes' conviction and sentence are *affirmed.*

---

**3.** The *Hayes* court said (7 F.3d at 145):

A defendant qualifies as a career offender if he is convicted of a felony that is a crime of violence and has two previous felony convictions for crimes of violence. U.S.S.G. § 4B1.1; [*United States v.*] *Young*, 990 F.2d at 470. Section 4B1.2(1) defines a crime of violence as a felony offense under federal or state law that "has as an element the use, attempted use, or threatened use of physical force against the person of another, or ... involves conduct that presents a serious potential risk of physical injury to another." Because the statutory definition of Hayes' unregistered shotgun conviction does not involve the use, attempted use or threatened use of physical force against another, we focus solely on whether the charged conduct presented a serious potential risk of physical injury to another. *See Young*, 990 F.2d at 471.

We conclude that in Hayes' case it does. As we said in *United States v. Dunn*, 946 F.2d 615,

621 (9th Cir.), *cert denied*. 502 U.S. 950, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991), and *United States v. Huffhines*, 967 F.2d 314, 321 (9th Cir.1992); sawed-off shotguns are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force. These attributes led Congress to require registration of these weapons. *Huffhines*, 967 F.2d at 321.

**4.** We thus find it unnecessary to address the further question whether Fortes' prior conviction for conspiracy to commit bank robbery was also properly countable as an ACCA predicate "violent felony." *Compare United States v. Preston*, 910 F.2d 81 (3d Cir.), *cert. denied*, 498 U.S. 1103, 111 S.Ct. 1002, 112 L.Ed.2d 1085 (1991), *with United States v. King*, 979 F.2d 801 (10th Cir. 1992).