

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-21-2006

# USA v. Fields

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1318

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Fields" (2006). *2006 Decisions.* Paper 1234.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1234

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-1318

UNITED STATES OF AMERICA

v.

EDMUND BRUCE FIELDS,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Judge: Honorable David Stewart Cercone
(District Court No.: 03-cr-289)

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 28, 2006

Before: RENDELL, SMITH, and BECKER, *Circuit Judges*

(Filed: April 21, 2006)

OPINION OF THE COURT

SMITH, *Circuit Judge.*

Appellant Edmund Bruce Fields was convicted of possession with intent to

distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and possession

of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g). The District

1

Court concluded that Fields was a career offender pursuant to U.S.S.G. § 4B1.1(a) and determined that his guideline sentencing range was a 210 to 262 month term of imprisonment. The Court imposed a 210 month term of imprisonment for the drug charge, a concurrent 120 month term of imprisonment for the ammunition charge, and three years of supervised release. Fields now appeals the conviction and sentence on grounds that: (1) the District Court improperly denied his motion to suppress the evidence against him; (2) the District Court inappropriately determined that his prior conviction constituted a crime of violence pursuant to U.S.S.G. 4B1.2(a)(2); and (3) 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied in this case. We disagree with each of Fields' contentions. Accordingly, we will affirm the District Court's judgment of conviction and approve its substantive application of the sentencing guidelines.[1] Nonetheless, we conclude–and the parties agree–that, in accordance with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and this Court's decision in *United States v. Davis*, 407 F.3d 162 (3d Cir. 2005), we must vacate Fields' sentence and remand the matter to the District Court for re-sentencing.

I.

On March 7, 2003, Canonsburg Police Department Detective Charles Tenney and his partner, Officer Michael Leger, were on patrol in a marked police cruiser when they

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise appellate jurisdiction over Fields' conviction pursuant to 28 U.S.C. § 1291 and over his sentence pursuant to 18 U.S.C. § 3742.

2

observed the driver of a grey Ford pickup truck make a turn without using a signal. The truck contained a driver and two passengers, all of whom sat on a single bench seat. When the driver pulled into a CoGo's convenience store parking lot, Detective Tenney pulled in behind him. As the truck came to a stop, one of the passengers–who was later identified as Fields–exited the vehicle and entered the store. While Fields was inside the store, Detective Tenney approached the vehicle and asked the driver, Raymond Ward, for his license. When he did so, the passenger who remained in the truck with Ward–later identified as Anthony "Crazy Boy" Hutchinson–moved to the far end of the bench seat, near the passenger window. Tenney issued a verbal warning to Ward and returned to his patrol car.

When Fields returned to the truck, Hutchinson slid back to the center of the bench, and Ward backed up and began to leave the parking lot. As Ward drove out of the lot, the truck passed in front of the police cruiser's headlights, and Detective Tenney recognized the middle passenger as "Crazy Boy" Hutchinson. Tenney, a member of the Washington County Drug Task Force, was familiar with Hutchinson from a previous arrest and from other information he obtained through his work on the Task Force. Approximately a month before the investigatory stop on March 7, a Task Force agent had notified Tenney that there was an outstanding warrant for Hutchinson's arrest. Relying on this information, Tenney followed the truck out of the parking lot.

As Detective Tenney trailed the truck, he radioed dispatch in an effort to confirm the existence of the outstanding warrant and advised another officer, Sergeant James

3

Spignola, that he needed backup. Tenney activated his lights and pulled the truck to the side of the road. Tenney received two confirmations of the outstanding warrant, but it is unclear from the record whether he received them before or after he activated his lights and stopped the vehicle.[2]

During the course of the stop, Detective Tenney asked Ward to step out of the vehicle, and Sergeant Spingola moved him to the back of the cruiser and conducted a pat-down. Tenney and Spingola returned to the driver's side of the vehicle, and Detective Tenney informed Hutchinson of the outstanding warrant and asked him to exit the vehicle. As Hutchinson moved towards the door, Sergeant Spingola observed a revolver perched in a cargo net between Fields' legs. After patting-down and securing

---

[2] At the suppression hearing, Detective Tenney testified that "there was a hit for an Anthony Hutchinson" and "that radio control advised [him] that there was an active warrant" *before* he activated his lights. App. at 121. During cross-examination at the trial, however, he testified:

> Q: Did you call dispatch to find out about Hutchinson before you stopped their car the second time?
> A: I'm not sure. I'm not sure. I had the information, and that's what I based it on.
> Q: Did you–you did call to check on the warrant after you stopped the truck, at least, right?
> A: Yes, sir; that's exactly when I did it.

App. at 466. In connection with the motion to suppress made during the trial, defense counsel also submitted documents that the government had produced after the suppression hearing, which reflected the radio communications between Detective Tenney and the dispatchers. Although these documents appear to support Field's contention that the verification of the warrant did not occur prior to the stop, we need not address the issue in light of our conclusion that Tenney's personal knowledge was sufficient to support a finding of reasonable suspicion.

Hutchinson, the officers ordered Fields out of the truck. In conducting a pat-down of Fields, Officer Leger discovered a fully-loaded speed loader with six .38 special rounds of ammunition in Fields left shirt pocket, a stack of folded cash in the amount of $1298 in his right front pants pocket, and a razor blade with a white powdery residue in his left front pants pocket. Fields was advised of his *Miranda* rights and arrested. At the police station, Detective Tenney and Sergeant Spingola conducted a full search and discovered heroin in Fields' right shoe.

A grand jury issued a three-count indictment against Fields, charging him with: (1) possession with intent to distribute less than 100 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) carrying a firearm during and in relation to a drug trafficking crime and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Fields was tried and the jury found him guilty as to Count One and Count Three insofar as it related to possession of ammunition; the jury returned a verdict of not guilty as to Count Two and as to Count Three insofar as it related to possession of a firearm.

## II.

Before, during, and after the trial, Fields moved to suppress the evidence against him on the basis that the vehicle stop violated the Fourth Amendment. On appeal, Fields argues that the District Court committed clear error in finding that Detective Tenney received confirmation of the outstanding warrant for Hutchinson's arrest before

5

conducting the stop. For the purposes of reviewing a ruling on a motion to suppress, we review a district court's findings of fact for clear error, and its conclusions of law *de novo*. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). We will affirm.

Consistent with the Fourth Amendment, a law enforcement officer may conduct an investigatory stop of a moving automobile when the officer has a reasonable and articulable suspicion that the vehicle's occupants are involved in criminal activity. *See United States v. Hensley*, 469 U.S. 221, 226 (1985) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)). To determine whether an officer's suspicion was reasonable, the court must examine "the totality of the circumstances," including the officer's knowledge and experience. *See United States v. Robertson*, 305 F.3d 164, 166 (3d Cir. 2002).

Fields contends that Officer Tenney lacked reasonable suspicion because he did not receive confirmation of the existence of an outstanding warrant for Hutchinson until after he stopped the vehicle. Although we agree that the record is ambiguous with respect to the timing of the confirmation, the District Court also found that "because Tenney worked on the [Task Force]," he had personal knowledge "that there was an active bench warrant for Hutchinson." This knowledge is itself sufficient to establish reasonable suspicion. *Cf. Hensley*, 469 U.S. at 232 (holding that an officer may rely upon information in a "wanted flyer" or police bulletin). We therefore need not determine whether Detective Tenney received verification of the warrant prior to conducting the

6

investigatory stop and conclude that the District Court properly denied the motion to suppress.[3]

## III.

Fields also contends that the District Court erred in finding that his prior conviction for possession of an unregistered short-barreled rifle in violation of 26 U.S.C. § 5861(d) constituted a "crime of violence," a determination which subjected him to an enhanced sentence as a career offender under U.S.S.G. § 4B1.1. He argues that because the District Court made findings regarding the nature of his prior crime, and not merely the fact of conviction, it violated his Sixth Amendment rights as set forth in *United States v. Apprendi*, 530 U.S. 466, 490 (2000), and *United States v. Booker*, 125 S. Ct. 738, 750 (2005). In the alternative, he suggests that even if the District Court was permitted to make such a determination, it nevertheless erred in concluding that his prior crime was a "crime of violence." We disagree on both counts.

Section 4B1.1 of the United States Sentencing Guidelines provides that a "defendant is a career offender if . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The term

---

[3] We note that Fields does not contest Detective Tenney's testimony that another Task Force agent informed Tenney of the existence of an active warrant for Hutchinson. Rather, he contends that Tenney did not have reasonable suspicion because he failed to confirm that the warrant was still outstanding at the time of the investigatory stop. *See* Appellant's Reply Br. at 1-2. Although in some circumstances an officer's reliance on personal knowledge may not be reasonable because that knowledge is based on stale information, in this case we find that the information was not so dated as to render Detective Tenney's suspicion unreasonable.

"crime of violence" is defined in § 4B1.2(a)(2) as, among other things, "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . involves conduct that presents a serious potential risk of physical injury to another." Contrary to Fields' contention, a determination regarding whether a prior offense is a "crime of violence" is a legal question. *See United States v. McQuilken*, 97 F.3d 723, 727 (3d Cir. 1996) ("The proper construction of the term "crime of violence" is a legal question . . . ."). The District Court in this case did not make factual findings about the commission of the crime itself, but determined whether a violation of  26 U.S.C. § 5861(d), as a categorical matter, was a "crime of violence." Accordingly, the District Court did not violate Fields' Sixth Amendment rights in making the career offender determination.

The question then is whether the District Court erred in concluding that Fields' prior conviction was for a "crime of violence." Our review is plenary,  *McQuilken*, 97 F.3d at 727, and we will affirm. Fields' prior conviction was for a violation of 26 U.S.C. § 5861(d), a statutory provision which makes it unlawful "to receive or possess a firearm which is not registered . . . in the National Firearms Registration and Transfer record." "For purposes of the statute, 'firearm' is not defined broadly to include all weapons; rather, it is narrowly circumscribed to forbid the unregistered possession of specific types of guns and other destructive devices." *United States v. Jennings*, 195 F.3d 795, 799 (5th Cir. 1999) (citations omitted). The definition of the term "firearm" includes short-barreled rifles. 26 U.S.C. § 5845(a).

8

Several of our sister circuits have concluded that possession of a weapon in violation of § 5861(d) constitutes a "crime of violence" because it "involves conduct that presents a serious potential risk of physical injury to another." *See United States v. Brazeau*, 237 F.3d 832 (7th Cir. 2001); *United States v. Johnson,* 246 F.3d 330 (4th Cir. 2001); *United States v. Dwyer,* 245 F.3d 1168 (10th Cir. 2001); *United States v. Allegree*, 175 F.3d 648 (8th Cir. 1999); *United States v. Fortes*, 141 F.3d 1 (1st Cir. 1998); *United States v. Hayes*, 7 F.3d 144 (9th Cir. 1993). These courts have reasoned that, in enacting § 5861, Congress determined that such weapons are, by their very nature, "inherently dangerous," "lack usefulness," and "their possession involves substantial risk of improper physical force." *See Hayes*, 7 F.3d at 145; *see also Allegree*, 175 F.3d at 651; *Brazeau*, 237 F.3d at 845. We agree with this analysis, and therefore, we find no error in the District Court's determination that Fields qualified as a career offender.

## IV.

Fields final argument is that 18 U.S.C. § 922(g), under which he was charged for unlawful possession of ammunition, is unconstitutional on its face and as applied because Congress exceeded its authority under the Commerce Clause in enacting it. We squarely addressed and rejected this same argument in *United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001), and can discern no reason to revisit the issue here.

## V.

For the reasons set forth above, we will affirm the judgment of conviction by the District Court. Despite our determination that the District Court properly applied the

9

sentencing guidelines in this case, we nevertheless conclude that Fields is eligible for re-sentencing pursuant to *Booker* and *Davis*.  We will vacate the sentence imposed by the District Court and remand the matter for re-sentencing.