NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4561
_____

UNITED STATES OF AMERICA

v.

EDMUND BRUCE FIELDS,
            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Action No. 2:03-cr-00289-001)
District Judge: Honorable David S. Cercone
_____

Submitted Under Third Circuit LAR 34.1(a)
October 24, 2012
_____

Before: HARDIMAN, GREENAWAY, JR., and VANASKIE, *Circuit Judges*.

(Opinion Filed: January 23, 2013)
_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

The instant appeal arises from the District Court's denial of Appellant Edmund

Bruce Fields' ("Appellant") 28 U.S.C. § 2255 motion to vacate his sentence. As grounds

for relief, Appellant had argued ineffective assistance of counsel, alleging that his

attorney failed to procure certain documents and testimony that would have altered the outcome of a suppression hearing. For the reasons discussed below, we will affirm the District Court's denial of Appellant's motion.

## I. Facts and Procedural History

Because we write primarily for the benefit of the parties, we recount only the facts essential to our discussion. In March 2003, Canonsburg Police Department Detective Charles Tenney ("Detective Tenney") effectuated an investigatory stop of a pickup truck in which the Appellant was a passenger. Detective Tenney had stopped the truck because he recognized another passenger, Anthony "Crazy Boy" Hutchinson, from his work with the Washington County Drug Task Force (the "Task Force"). Not only was Detective Tenney familiar with Hutchinson's prior illicit activities but, a month before the stop, another Task Force agent had mentioned the existence of an outstanding warrant for Hutchinson's arrest. Following the stop, the police conducted a pat-down search of Appellant's person and discovered that he was in possession of ammunition for a revolver that was located inside the truck, roughly $1300 in cash, and a razor blade with white powdery residue. Another search, this time at the police station, revealed heroin in Appellant's shoe.

Appellant was subsequently indicted and charged with (1) possession with intent to distribute less than 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1); (2) carrying a firearm during and in relation to a drug trafficking crime, in violation of 18

2

U.S.C. § 924(c); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Prior to his trial, Appellant moved to suppress the evidence against him, arguing that the investigatory stop violated the Fourth Amendment.[1] At the suppression hearing, Detective Tenney testified regarding his familiarity with Hutchinson and about the warrant for his arrest.[2] When pressed on cross-examination, the detective noted that, while he could not remember specifically who had informed him of the warrant, it may have been an "Agent Sepic." (App. at 134.) The detective also stated that he had radioed

---

[1] In point of fact, the suppression hearing focused not only on the investigatory stop, but on the subsequent searches. (*See* App. at 46-47.) However, because Appellant's § 2255 motion concerned only the investigatory stop aspect, (*see id.* at 33-39), we will confine our discussion to that specific issue.

[2] In relevant part, Detective Tenney testified as follows:

> A. Hutchinson is known to me from calls within our jurisdiction and has been known to sell — allegedly sells heroin and is involved in gang activity in the City of Pittsburgh.
> Q. And did you know anything about whether Mr. Hutchinson was wanted on any outstanding warrants at the time this car drove through the headlights of your vehicle?
> . . .
> A. I was — I worked on an Attorney General's Task Force also at the time. One of the agents advised me, "Hey, we're looking for Crazy Boy. There's warrants for him now," for unrelated charges in another county, I believe, I'm not sure; and he was entered into NCIC.
> Q. Okay. How long before — approximately how long before this incident on March 7th, 2003, had you been advised by someone on the Attorney General's Task Force that Hutchinson was wanted?
> A. It was over a period of several months that I talked to them. I think it dates back to January, and then we obviously worked cases together the whole time, so I really couldn't tell you. Maybe a month; I couldn't tell you. It could have been three weeks, a month.

(App. at 117-18.)

3

dispatch to confirm the existence of the warrant prior to stopping the truck. Based on this testimony, the District Court denied Appellant's motion to suppress.

Appellant was subsequently tried and convicted as to Count One and Count Three (though only insofar as it related to possession of ammunition). After the trial, Appellant filed a supplemental motion to suppress the evidence against him. This time, however, Appellant attached documents that had been produced after the suppression hearing reflecting the radio communications between Detective Tenney and the police dispatchers (the "dispatch records"). The dispatch records indicated that, contrary to Detective Tenney's testimony during the hearing, he had not received confirmation of the outstanding warrant until *after* he effectuated the investigatory stop. Nonetheless, the District Court denied the supplemental motion, holding that the investigatory stop was proper.

We affirmed Appellant's conviction in a 2006 not precedential opinion and held, among other things, that the District Court had not erred in denying the motions to suppress. *See United States v. Fields*, 176 F. App'x 327, 329-30 (3d Cir. 2006). While we noted the existence of ambiguity as to whether Detective Tenney in fact received confirmation prior to stopping the truck, we deemed the matter irrelevant "in light of our conclusion that Tenney's personal knowledge [of Hutchinson and the outstanding warrant] was sufficient" to justify the investigatory stop. *Id.* at 328 n.2. We remanded the case for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005).

Appellant was subsequently sentenced to a term of 210 months' imprisonment and several years of supervised release.

In July 2008, Appellant filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. In this motion, Appellant argued that his counsel was ineffective in (1) failing to obtain and introduce the dispatch records during the suppression hearing and (2) failing to challenge Detective Tenney's testimony that another Task Force member informed him of the outstanding warrant on Hutchinson. (Appellant Br. at 18-20.) The District Court disagreed, finding that the "[t]rial counsel's failure to obtain the [dispatch records was] irrelevant. Both this Court and the Court of Appeals found that Tenney's reliance on his personal knowledge was sufficient to create a reasonable suspicion that Hutchinson was involved in criminal activity" and thus justified the investigatory stop. (App. at 5.) Consequently, the District Court denied Appellant's § 2255 motion and granted a certificate of appealability.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction to rule on Appellant's motion pursuant to 28 U.S.C. § 2255. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 1291 and 2253. Given that the District Court denied Appellant's § 2255 motion without holding a hearing, our review is plenary. *United States v. Eakman*, 378 F.3d 294, 297 (3d Cir. 2004).

### III.   Analysis

To prevail on his claim of ineffective assistance of counsel, Appellant must satisfy a two-prong inquiry. *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Specifically, Appellant must demonstrate that "(1) his or her attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms . . . and (2) [that] there is a 'reasonable probability that, but for counsel's unprofessional errors, the result would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

This is no easy task. As the Supreme Court of the United States recognized, "scrutiny of counsel's performance must be highly deferential," and we must therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It thus falls to Appellant to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Since it is not the role of this Court to heedlessly cast aspersions on Appellant's counsel, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697. Therefore, we will consider whether Appellant was prejudiced due to his attorney's allegedly unreasonable actions in handling the motion to suppress. *See Day*, 969 F.2d at 42.

6

As discussed above, the suppression hearing concerned, among other things, the admissibility of evidence gathered as a result of an investigatory stop. Since "stopping a car and detaining its occupants constitute[s] a seizure within the meaning of the Fourth Amendment," *United States v. Hensley*, 469 U.S. 221, 226 (1985), the effectuating police officer must have a "reasonable suspicion, based on specific and articulable facts," that the vehicle's occupants are involved in criminal activity. *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 653-55 (1979)). "To determine whether reasonable suspicion exists, [the court] must consider the 'totality of the circumstances — the whole picture.'" *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 8 (1989)).

The District Court held that one basis for Detective Tenney's reasonable suspicion was his confirmation "that a passenger in the vehicle, Hutchinson, had a warrant out for his arrest." (App. at 63.) Since the dispatch records seem to indicate that this confirmation came only after Detective Tenney had already stopped the car, introducing them at trial could have undermined Detective Tenney's testimony and could have undermined this particular basis for a finding of "reasonable suspicion." Nonetheless, we find that this would not have resulted in a different outcome in the suppression hearing.

As we noted in our 2006 decision, "the District Court also found that 'because Tenney worked on the [Task Force],' he had personal knowledge 'that there was an active bench warrant for Hutchinson.' This knowledge is itself sufficient to establish reasonable suspicion." *Fields*, 176 F. App'x at 330 (quoting the District Court's

7

suppression hearing opinion). Indeed, in dismissing the § 2255 motion, the District Court reaffirmed its holding by noting that it had "found the stop reasonable because [Detective] Tenney was personally aware of Hutchinson's gang activity, as well as allegations of his involvement in drug trafficking." (App. at 5.) The dispatch records do nothing to undercut this basis for finding that Detective Tenney had a reasonable suspicion. To the contrary, as Appellee rightly points out in its Opposition Brief, the dispatch records would have "confirmed [Detective Tenney's] personal prior knowledge about the outstanding arrest warrant for Hutchinson." (Appellee Br. at 19.)

Appellant responds that his attorney could have challenged this secondary basis for finding reasonable suspicion by subpoenaing Agent Sepic to testify at the suppression hearing.[3] (Appellant Br. at 19-20.) We do not agree. After testifying that "one of the agents" on the Task Force informed him of the existing warrant, (App. at 118), Detective Tenney offered during cross-examination that "it *may have been* Attorney General Agent Sepic; *I'm not sure . . . Maybe* Attorney General Agent Sepic; *I'm not sure which agent. We worked with a lot of agents*," (*id.* at 134 (emphasis added)). At most, Agent Sepic could have testified that he was not the agent who had informed Detective Tenney of the outstanding warrant on Hutchinson. However, given Detective Tenney's equivocation, this testimony would have done little to undercut his assertion that *some* agent had

---

[3] Appellant also argues that his counsel "failed to otherwise hold the Government to its burden on this issue by producing the officer who allegedly provided the information to" Detective Tenney. (Appellant Br. at 19-20.) We see no merit in this argument given our 2006 holding that Detective Tenney's testimony as to personal knowledge, standing alone, was sufficient to establish a reasonable suspicion. *See Fields*, 176 F. App'x at 330.

informed him of the outstanding warrant, and, in light of our 2006 holding, does little to "undermine confidence in the outcome" of the suppression hearing. *Strickland*, 466 U.S. at 694.[4]

Appellant has failed to demonstrate that there was a "reasonable probability" of a contrary outcome had his attorney introduced the dispatch records and Agent Sepic's testimony during the suppression hearing.

## IV.  Conclusion

For the aforementioned reasons, we will affirm the District Court's denial of Appellant's § 2255 motion.

---

[4] We are cognizant of the note in our 2006 opinion that Appellant "does not contest Detective Tenney's testimony that another Task Force agent informed Tenney of the existence of an active warrant for Hutchinson." *Fields*, 176 F. App'x at 330 n.3. However, on the facts of the instant case, we see no reason why the kind of token resistance suggested by Appellant would sway our decision — or influence the outcome of the suppression hearing. This is particularly true if Appellant also argues that his counsel should have submitted the dispatch records. As noted above, these records would have only served to support Detective Tenney's testimony.