NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0111n.06
Filed: February 9, 2007

Nos. 05-1542, 05-1632

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ROBERT S. ALEXANDER and | ) | WESTERN DISTRICT OF MICHIGAN |
| TYRONE MCKINSEY CLARK, | ) | |
| | ) | |
| Appellants. | ) | |

Before: GILMAN and SUTTON, Circuit Judges; and TARNOW, District Judge.*

SUTTON, Circuit Judge. A jury found Robert Alexander guilty of being a felon in possession of a firearm, and Tyrone Clark pleaded guilty to the same charge. In sentencing Alexander, the district court treated his prior conviction for carrying a concealed weapon as a "violent felony" under the Armed Career Criminal Act. Alexander did not object to this characterization of his concealed-weapon charge before the district court, but he does so now. As the district court did not commit plain error in adopting this interpretation of the Act—the courts are divided on the issue—and as the district court otherwise imposed reasonable sentences on both men, we affirm.

---

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

Early in the morning of June 15, 2004, the Grand Rapids Police Department dispatched two officers to respond to a complaint that several individuals were trespassing on the front porch of a house. When they arrived, the police found Robert Alexander and Tyrone Clark sitting on the front steps. The officers explained why they were there and asked the two men to identify themselves. Although Alexander gave his real name, Clark gave the name "Corey Denson." One of the officers returned to the patrol cruiser, ran the names through its computer system and discovered (after reviewing a photo index of previously arrested individuals in the county) that Corey Denson was Tyrone Clark. The officer also saw that there were three outstanding warrants for Clark's arrest.

When the officers attempted to arrest Clark, he resisted. During the ensuing struggle, Clark dropped a semiautomatic pistol on the steps near Alexander and yelled "Shoot 'em. Shoot 'em, Cuz. Shoot, shoot." JA 30. Alexander picked up the gun, placed it behind his leg and stood up. Both of the officers immediately drew their firearms and told Alexander to "Drop the gun." JA 35. About ten seconds later, Alexander placed the gun on a nearby ledge. The officers arrested both Alexander and Clark, after which they found (on Clark) a magazine with three rounds of ammunition along with several rocks of crack cocaine.

A federal grand jury indicted Alexander for violating the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1), and a jury found him guilty of the charge. At his sentencing hearing, the district court recognized that Alexander had twice pleaded guilty to possessing cocaine with intent

to distribute, Mich. Comp. Laws § 333.7401(2)(a)(iv), and once pleaded guilty to carrying a concealed weapon, Mich. Comp. Laws § 750.227. Concluding that Alexander had committed three "violent felonies" under the Armed Career Criminal Act, 18 U.S.C. § 924(e), the district court imposed a 188-month sentence. At the end of the hearing, the court gave Alexander an opportunity to object to his sentence, which he declined to do.

A federal grand jury indicted Clark on a felon-in-possession charge as well as a charge for possessing crack cocaine with intent to distribute, 21 U.S.C. § 841(a)(1). Clark pleaded guilty to the felon-in-possession charge and to a reduced charge of possession of crack cocaine, 21 U.S.C. § 844(a). Noting that Clark had "one of the most extraordinary records of convictions and arrests for somebody 24 years old that I've ever seen," JA 33, the district court concluded that a sentence within the guideline range was necessary "to achieve the intended consequences of [the 18 U.S.C. § 3553(a)] factors," JA 34. The district court also noted that "given his young age and the fact [Clark] hasn't done a lot of time in the past, it also appears as if a sentence at the bottom end of the guidelines range would . . . be appropriate in this case." JA 35. The court sentenced Clark to 110 months' imprisonment. Before concluding the hearing, the district court offered Clark an opportunity to object to his sentence, which he declined to do.

## II.

When a litigant fails to voice a claim at trial but does so on appeal, we review the argument for plain error. Fed. R. Crim. P. 52(b). In conducting that review, we must first decide whether there

is "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotation marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted); *see also United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

A.

Alexander argues that the district court erred in sentencing him under the Armed Career Criminal Act. Under the Act, a person who violates the felon-in-possession statute, 18 U.S.C. § 922(g), and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . shall be fined . . . and imprisoned not less than fifteen years," *id.* § 924(e)(1). Alexander concedes that he has committed two "serious drug offenses," but he contends that the crime of carrying a concealed weapon is not a "violent felony." Because Alexander did not raise this argument below, plain-error review governs our resolution of it.

A "violent felony," the Act says, is "any crime punishable by imprisonment for a term exceeding one year, . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Under Michigan law, one violates the concealed-carry

prohibition by "carry[ing] a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person . . . without a license to carry the pistol as provided by law." Mich. Comp. Laws § 750.227(2). Our sister circuits have reached conflicting conclusions on the point. *Compare United States v. Whitfield*, 907 F.2d 798, 800 (8th Cir. 1990) ("Although carrying [a concealed] weapon may involve a continuing risk to others, the harm is not so immediate as to present a serious risk of physical injury to another.") (internal quotation marks and brackets omitted), *with United States v. Hall*, 77 F.3d 398, 401 (11th Cir. 1996) ("Carrying a concealed weapon is conduct that poses serious potential risk of physical injury and, so, falls under the definition of violent felony."). Another panel of our court, *see United States v. Flores*, No. 06-1152 (6th Cir.), *argued* Jan. 24, 2007, has the issue in front of it in a case that does not involve plain-error review.

Because no one suggests that carrying a concealed weapon comes within the Act's first clause (the "threatened use of physical force" clause), the question is whether carrying a concealed weapon "involves conduct that presents a serious potential risk of physical injury to another." In construing this clause, we have found the following state-law violations to satisfy the requirement: retaliation for past action, *see United States v. Sawyers*, 409 F.3d 732, 742–43 (6th Cir. 2005), "escaping or attempting to escape while confined in a county workhouse or jail," *United States v. Houston*, 187 F.3d 593, 594 (6th Cir. 1999), sexual battery, *see United States v. Mack*, 53 F.3d 126, 128 (6th Cir. 1995), and attempted kidnaping by deception, *see United States v. Kaplansky*, 42 F.3d 320, 323–24 (6th Cir. 1994) (en banc).

This category, we have held, also includes crimes that, even absent a serious potential for violent confrontation, show an inherent disregard for human life—making them similar to the enumerated crimes of burglary, arson, extortion or the use of explosives. As a result, involuntary manslaughter is a "violent felony" under the Act, *see United States v. Sanders*, 97 F.3d 856, 860 (6th Cir. 1996), even though the victim's death need not result from a violent confrontation. Similarly, our unreported cases have found criminally negligent homicide, *United States v. Fleenor*, No. 05-6444, 2007 WL 30785, at *2 (6th Cir. Jan. 4, 2007), and attempted involuntary manslaughter, *see United States v. Zabawa*, 134 F. App'x 60, 65–66 (6th Cir. June 7, 2005), to be "violent felonies" because each requires that the offender commit a criminally negligent act that results in the victim's death.

We have suggested that grand larceny under Tennessee law might not by itself encompass sufficiently dangerous conduct, but that grand larceny while in possession of a firearm does present a "serious potential risk" of violence because "the firearm's very presence creates the possibility—the risk—that the offender will use the firearm if he meets with resistance or is detected." *United States v. Seaton*, 45 F.3d 108, 112–13 (6th Cir. 1995). And we have held that possessing a weapon during a flight from authorities poses a "serious potential risk of physical injury . . . to anyone with whom the fleeing person may come into contact." *United States v. Sanders*, 470 F.3d 616, 621 (6th Cir. 2006).

Informed by these precedents and the language of the Act, we do not think that a concealed-weapon conviction rises to the level of a "violent felony." *First*, carrying a concealed weapon does

not present the same degree of risk as the enumerated crimes. Unlike burglary or extortion, carrying a concealed weapon without a license does not typically engender a violent confrontation—or for that matter any confrontation at all. And when a person carries a concealed weapon, he does not show an inherent disregard for human life, which contrasts with the arsonist or user of explosives, who rarely can control the damage caused by the crime.

*Second*, the enumerated "violent felonies"—burglary, arson, extortion, use of explosives—all typically require the offender to engage in active conduct. Just as an individual who merely *possesses* explosives or *possesses* a match would not commit a "violent felony," so an individual who merely *possesses* a concealed weapon would not seem to commit such a crime. *See United States v. Oliver*, 20 F.3d 415, 418 (11th Cir. 1994) ("These [enumerated] offenses each manifest affirmative, overt and active conduct in which the danger posed to others . . . is far more threatening in an immediate sense."). For similar reasons, several circuits have held that a felon-in-possession offense, a crime similar to concealed possession, does not present a risk sufficient to warrant classification as a "violent felony." *See, e.g.*, *Oliver*, 20 F.3d at 418; *United States v. Garcia-Cruz*, 978 F.2d 537, 543 (9th Cir. 1992); *United States v. Doe*, 960 F.2d 221, 224–26 (1st Cir. 1992). And the United States Sentencing Commission has indicated that the term "crime of violence" used in the Sentencing Guidelines (and defined similarly to "violent felony" under the Armed Career Criminal Act) "does not include the offense of unlawful possession of a firearm by a felon." U.S.S.G. § 4B1.2(a) cmt. 1.

*Third*, it is odd to label carrying a concealed weapon a "violent felony" when several States *expressly permit* their residents to do that very thing. Take the four States within the Sixth Circuit. Three of them—Kentucky, Michigan, Ohio—generally prohibit the carrying of a concealed weapon, *see* Ky. Rev. Stat. § 527.020; Mich. Comp. Laws § 750.227; Ohio Rev. Code § 2923.12, but each State allows its citizens to acquire a license to do so under certain circumstances, *see* Ky. Rev. Stat. § 237.110 (describing the process for obtaining a license "to carry concealed firearms or other deadly weapons"); Mich. Comp. Laws § 28.425b (describing the process for "obtain[ing] a license to carry a concealed pistol"); Ohio Rev. Code § 2923.125 (setting forth licensing requirements for carrying a concealed handgun). The fourth State—Tennessee—goes one step further. There, carrying a concealed weapon (without a permit) is no more a crime than possessing any firearm (without a permit). *See* Tenn. Code §§ 39-17-1307, 39-17-1308; *see also id.* § 39-17-1351 (setting forth the requirements for obtaining a permit). In marked contrast, these States do not expressly permit their residents to obtain licenses to commit burglary, arson or extortion. And to the extent licenses are available to use explosives, that is only to use them in discrete circumstances, not in most parts of the State. Odder still, many individuals convicted of the offense merely will have failed to negotiate the bureaucracy that controls concealed handgun permits; there is no reason to think that these felons are especially dangerous to society nor to think that Congress intended them to serve, at a minimum, fifteen years' imprisonment if later caught with a gun.

The government urges us to follow the Eleventh Circuit, which held that carrying a concealed weapon is substantially more dangerous than being a felon-in-possession and therefore amounts to

a "violent felony" under the Act. In *United States v. Hall*, 77 F.3d 398 (11th Cir. 1996), the court found that "[a] substantial difference—in terms of the likelihood of immediate violence flowing from the crime—exists between" the crimes, because "carrying a concealed weapon requires the weapon to be . . . on or about the person," whereas "for simple [felon-in-]possession—[the firearm] need not be found on or about the defendant," *id.* at 402 n.4. The government bolsters this reasoning by arguing that, unlike "mere possession," concealment "emboldens the person who is surreptitiously armed with the weapon" and keeps bystanders "unaware of the potential danger looming in their surroundings." Gov't Br. at 15. As an initial matter, most people, we suspect, would prefer to take their chances with a non-felon carrying a concealed weapon than with a felon carrying a weapon that is plainly visible. But even if we grant for the sake of argument that carrying a concealed weapon is more dangerous than the offense of felon-in-possession, what would this prove? The government has not contended that the felon-in-possession offense itself presents a "serious potential risk of physical injury to another." And this argument does not show that carrying a concealed weapon without a license poses the same type and degree of risk inherent in burglary and extortion, or in arson and crimes involving the use of explosives.

*Shepard v. United States*, 544 U.S. 13 (2005), moreover, prohibits us from turning to the details of Alexander's previous conviction as set out in the presentence report, *see id.* at 26 (limiting inquiries under the Armed Career Criminal Act to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant . . . or to some comparable

judicial record"). We thus may premise our decision only on the statutory definition of the crime, Mich. Comp. Laws § 750.227(2), not on Alexander's specific conduct in violating it.

Although the district court erred in labeling Alexander's prior conviction for carrying a concealed weapon a "violent felony" under the Armed Career Criminal Act, the error was not "plain." Until today, the question presented—whether carrying a concealed weapon is a "violent felony" for purposes of the Act—was an open one in our circuit, *see United States v. Flores*, 118 F. App'x 49, 54 (6th Cir. Dec. 17, 2004), and it was one on which our sister circuits were divided, *compare Whitfield*, 907 F.2d at 800, *with Hall*, 77 F.3d at 401–02. The conflicting precedents on the question at hand show that the error was not plain. *See United States v. Barrow*, 118 F.3d 482, 492 (6th Cir. 1997) ("[I]n light [of] the circuit split . . . and the lack of definitive precedent in this Circuit, the error was not 'plain.'"); *United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995) ("[A] circuit split precludes a finding of plain error."); *United States v. Blandford*, 33 F.3d 685, 712 (6th Cir. 1994) ("Because the . . . issue has divided our sister circuits, we cannot see that the district court's alleged error . . . was a 'plain' one . . . .").

B.

Clark challenges the procedural reasonableness of his sentence, claiming that the district court "based its sentence solely on Mr. Clark's prior criminal record" and neglected the remaining sentencing factors found in 18 U.S.C. § 3553(a). Clark Br. at 8. Because Clark did not raise this issue below, even after the district court asked his counsel whether he had any objections to the

sentence, we review the claim for plain error. *See United States v. Harden*, 195 F. App'x 382, 385 (6th Cir. Aug. 16, 2006) (reviewing sentence for plain error because defendant "did not raise the issue of the procedural inadequacies of the district court's sentencing determination"); *United States v. Carroll*, 189 F. App'x 450, 454 (6th Cir. July 19, 2006) (same); *United States v. Willis*, 176 F. App'x 653, 656–57 (6th Cir. Apr. 20, 2006) (same).

No plain error occurred. To ensure reasonable sentencing, we require a district court to appreciate the advisory nature of the guidelines, to calculate the appropriate guidelines range and to consider that range alongside the other relevant statutory factors. *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006). The district court in this instance properly calculated the guidelines range (110–137 months), 18 U.S.C. § 3553(a)(4), and noted that the range was "advisory." JA 33. In finding that a guidelines sentence was "necessary[] to comply with the [statutory] purposes," 18 U.S.C. § 3553(a), the district court examined the criminal "history . . . of the defendant," *id.* § 3553(a)(1), noting that Clark had "one of the most extraordinary records of convictions and arrests for somebody 24 years old that I've ever seen," JA 33, that "Clark didn't really serve anything meaningful when he was a juvenile," *id.*, and that after Clark had violated probation as an adult, "he went on to commit 18 more adult convictions," JA 34. This history showed, the district court concluded, that Clark did not appreciate "the need to follow the rules," *id.*, so a guidelines sentence was needed to "promote respect for the law," 18 U.S.C. § 3553(a)(2)(A), and to "protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C).

The district court gave heed to the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), noting that although Clark admitted responsibility for possessing drugs, he still objected to the government's characterization that he was dealing drugs—even though "he had a digital scale with him that he discarded, and the drugs [found on him] were . . . packaged for sale." JA 34. The court thus was "not convinced that [Clark was] even willing to step up to the plate for the conduct that resulted in this particular arrest." *Id.*

The district court analyzed the "characteristics of the defendant," 18 U.S.C. § 3553(a)(1), when it noted that Clark was "apparently an articulate guy, and the letter that he wrote to the Court is actually well done," JA 34. Clark thus had "the ability, but not the desire . . . to conform his conduct to society," *id.*, so that a within-guidelines sentence was needed to "promote respect for the law," 18 U.S.C. § 3553(a)(2)(A). The court also recognized that "given [Clark's] young age and the fact that he hasn't done a lot of time in the past," JA 35, a sentence at the bottom of the guidelines range would be "sufficient . . . to comply with the [statutory] purposes," 18 U.S.C. § 3553(a).

The court also considered "the kinds of sentences available," 18 U.S.C. § 3553(a)(3), noting that probation was not appropriate. And the court tailored Clark's sentence to his particular "history and characteristics." The court recommended that Clark "receive substance abuse treatment and vocational training," JA 35; *see* 18 U.S.C. § 3553(a)(2)(D), required that Clark undergo "a program of testing and treatment for substance abuse as directed by the probation officer," JA 36, and ordered that Clark "refrain from all use of alcoholic beverages" "[g]iven his record and his drug problems," *id.* In recognition of Clark's financial and family situations, the district court ordered that Clark

"perform 100 hours of community service . . . in lieu of a fine," and that "[a]fter payment of the special assessment, the obligation to pay child support shall take precedence to all other financial obligations imposed by this judgment." *Id.* In view of the district court's thorough examination of the evidence before it in connection with the statutory factors, we are hard-pressed to find any error in the district court's reasoning, let alone a plain one.

III.

That leaves one other issue—Alexander's claim that his trial counsel provided ineffective assistance in failing to object when the district court enhanced his sentence under the Armed Career Criminal Act on, among other grounds, the theory that his concealed-carry violation amounted to a violent felony. As Alexander acknowledges, "this Court is reluctant to hear claims of ineffective assistance of counsel on direct appeal—and rightfully so." Alexander Br. at 13; *see Massaro v. United States*, 538 U.S. 500, 504 (2003). The question, however, is whether this is one of those rare instances in which it is appropriate on direct appeal to entertain an ineffective-assistance claim—perhaps because the underlying question seems to present a pure issue of law, perhaps because resolution of the issue could have a relatively prompt effect on Alexander's release from prison, or perhaps because both reasons apply here. During oral argument, the court asked counsel for the government whether, if Alexander were right about the concealed-carry issue but still could not prevail in view of the requirements of plain error, the government would force him to litigate his ineffective-assistance claim or would simply acquiesce to a new sentencing hearing. To his credit, the government's counsel acknowledged that, if indeed a concealed-carry offense was not a "violent

- 13 -

felony," the United States would look carefully at whether it would permit Alexander to obtain re-sentencing without waiting to determine whether it was compelled to do so on the basis of an ineffective-assistance ruling from our court or the district court.

Under these circumstances, we will not address the ineffective-assistance claim at this point. Counsel for Alexander and the government are urged to discuss whether, in light of our ruling, it makes sense to require Alexander to seek an ineffective-assistance ruling from our court or the district court (through a §2255 petition) before he may obtain a second sentencing hearing. To the extent the parties are unable to resolve the issue between themselves, Alexander is urged to file a timely petition for rehearing regarding our failure thus far to reach his ineffective-assistance claim and to explain in some detail why we should grant relief. The government at that point will be given an equal opportunity to file a brief explaining its contrary position.

IV.

For these reasons, we affirm.