*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0302p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

No. 06-5032

AUBREY SHANTE AMOS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 05-00006—William J. Haynes, Jr., District Judge.

Argued: January 31, 2007

Decided and Filed: August 9, 2007

Before: MARTIN, BATCHELDER, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Paul M. O'Brien, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. C. Douglas Thoresen, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Paul M. O'Brien, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellant. C. Douglas Thoresen, Michael C. Holley, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellee.

MARTIN, J., delivered the opinion of the court. BATCHELDER, J. (p. 7), delivered a separate opinion concurring in the judgment. McKEAGUE, J. (pp. 8-11), delivered a separate dissenting opinion.

_____

**OPINION**

_____

BOYCE F. MARTIN, JR., Circuit Judge. This case presents a single legal question of first impression in this Circuit — whether a defendant's prior conviction for possession of a sawed-off shotgun can serve as a predicate "violent felony" for purposes of a sentencing enhancement under the Armed Career Criminal Act. The district court held that it does not and for the following reasons, we **AFFIRM** its decision.

I.

Defendant Aubrey Shante Amos was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Amos pled guilty to the charge on August 5, 2005. The government sought an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), based on Amos's three prior convictions for (1) reckless endangerment, (2) possession of a sawed-off shotgun, and (3) possession of cocaine with intent to sell. At sentencing, defense counsel conceded that the prior convictions for reckless endangerment and for cocaine possession were predicate offenses under the ACCA, but challenged the use of the conviction for possession of a sawed-off shotgun as a predicate offense. According to the government, this conviction met the statutory definition of a violent felony because sawed-off shotguns must be registered under federal law, are inherently dangerous and lack a useful purpose, and because their possession presents a serious potential risk of injury to another. Defense counsel argued that mere possession of a firearm cannot amount to a violent felony.

The district court rejected the government's argument, and ruled that under the categorical approach followed by the Sixth Circuit, a violation of the state statute in question could not amount to a violent felony under the ACCA. The district court also noted that a Fifth Circuit case, *United States v. Diaz-Diaz*, held that "possession of a short-barrel firearm is not a [18 U.S.C.] § 16(b) 'crime of violence.'" 327 F.3d 410, 414 (5th Cir. 2003). As a result, the district court sentenced Amos without the ACCA enhancement, which would have required a minimum 15 year (180 month) sentence, and instead imposed a sentence of 120 months, followed by three years of supervised release. The government brought the present appeal from the district court's sentencing decision.

II.

We review de novo "a district court's conclusion that a crime constitutes a violent felony under the ACCA or a crime of violence under the ACCA's parallel provision in the [Sentencing] Guidelines." *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005). "[I]t is the government's burden to prove that a defendant qualifies for the mandatory 15-year ACCA enhancement." *Id*.

The ACCA provides for a mandatory minimum sentence of 15 years for a defendant who is convicted of violating 18 U.S.C. § 922 (g), the felon in possession statute, and has three prior convictions for a violent felony or a serious drug offense. 18 U.S.C. § 924 (e). The statute defines violent felony as follows:

> the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, . . . that--
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another;

18 U.S.C. § 924 (e)(2)(B). Because possession of a sawed-off shotgun is not one of the specifically named offenses (burglary, arson, or extortion), and does not involve the use of explosives or the threat of physical force against another person, it would only qualify as a predicate offense if it is deemed to be "conduct that presents a serious potential risk of physical injury to another."

The government relied on no information regarding this offense beyond the Tennessee statute and the 1989 state court indictment as proof of the conduct associated with Amos's predicate offense. The relevant statute, Tenn. Code. Ann. § 39-6-1713, was apparently repealed in 1989, but included language prohibiting the possession of "any weapon of the kind commonly known as a sawed-off shotgun." The indictment simply stated that Amos

did unlawfully and feloniously possess a weapon commonly known as a sawed-off shotgun, the same being a shotgun having a barrel or barrels of less than eighteen inches in length or a weapon made from a shotgun which as modified has an overall length of less than twenty-six inches or a barrel or barrels of less than 18 inches in length, in violation of section 39-6-1713 of the Tennessee Code Annotated, and against the peace and dignity of the State of Tennessee.

The district court was correct that this Circuit requires use of the categorical approach, which focuses on the fact of the prior conviction and the underlying statute in assessing prior felonies. *United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006). Under this view, the language of the indictment and other factual records of the conduct related to the predicate offense are only considered if the language of the statute is not determinative. *Id.* The categorical approach therefore functions to exclude facts from the district court's consideration beyond the fact of the conviction and the statutory definition of the offense in question. *Id.* at 489 ("Under the categorical approach, it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct. This approach avoids the subsequent evidentiary enquiries into the factual basis for the earlier conviction." (internal citations and quotation marks omitted)). Here, although the government sought to introduce the language of the indictment, this language appears to have simply traced the statutory prohibition without mentioning any additional facts regarding Amos's criminal conduct. As a result, the categorical approach is not irrelevant, but does not factor heavily into our analysis.

Even so, it is worth noting that there is no showing that Amos did anything with the sawed-off shotgun beyond merely possessing it, and the analysis of this crime as a violent felony question focuses only on the language of the statute and the fact that he violated it. Further, as Amos points out, the Court "must consider the least objectionable conduct that would violate this statute." *United States v. Maness*, 23 F.3d 1006, 1008 (6th Cir. 1994). Consequently, to qualify as a violent felony, the possession of the gun would have to pose a serious potential risk to others even if Amos kept it as a collector's item or family heirloom, stored it in his attic, or used it to fend off groundhogs from his garden.

In seeking reversal, the government relies on the weight of authority from other circuits, noting that the First, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits have all found that mere possession of a sawed-off shotgun is either a "crime of violence"[1] under the Sentencing Guidelines, or a "violent felony" under the ACCA. *See, e.g., United States v. Serna*, 309 F.3d 859, 864 (5th Cir. 2002) ("[T]he unlawful possession a sawed-off shotgun under the Texas statute constitutes conduct that, by its nature, poses a serious potential risk of physical injury to another and is therefore a crime of violence."); *United States v. Brazeau*, 237 F.3d 842, 845 (7th Cir. 2001) ("The fact that sawed-off shotguns must be registered confirms our conclusion that such weapons are inherently dangerous, and the possession of such a weapon constitutes a crime of violence."); *United States v. Hayes*, 7 F.3d 144, 145 (9th Cir. 1993) ("sawed-off shotguns are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force. These attributes led Congress to require registration of these weapons."); *see also United States v. Johnson,* 246 F.3d 330, 334-35 (4th Cir. 2001); *United States v. Allegree*, 175 F.3d 648, 651 (8th Cir. 1999); *United States v. Fortes*, 133 F.3d 157, 163 (1st Cir. 1998).

The government correctly points out that the Fifth Circuit decision in *Diaz-Diaz*, relied upon by the district court and here again by Amos, involved a different statute, 18 U.S.C. § 16(b). The

---

[1]The definition of crime of violence under the Sentencing Guidelines is very similar to that of a violent felony under the ACCA, and, most significantly, it includes "conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a); *see Serna*, 309 F.3d at 864 ("The ACCA employs identical language to define 'violent felony' as the sentencing guidelines use to define 'crime of violence.'").

pertinent clause of section 16(b) includes within the crime of violence definition "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The clause "used in the course of committing the offense," which does not appear in the ACCA, narrows the section 16(b) definition and distinguishes it from that in the ACCA. The district court was therefore incorrect in its observation that *Diaz-Diaz* was indicative of a split of authority on the issue here. The government's position is confirmed by the Fifth Circuit's decision in *Serna*, where it found possession of a sawed-off shotgun to be a crime of violence under the Sentencing Guidelines, which unlike section 16(b) use almost identical language to that of the ACCA. It would therefore appear that every federal Court of Appeals that has addressed the question has held that possession of a sawed-off shotgun is either  a predicate violent felony under the ACCA, or, similarly, a crime of violence under the Sentencing Guidelines.

Relying primarily on the plain language of the statute, Amos argues that all of the cases cited by the government were wrongly decided. He points to a number of decisions holding that a prior violation of the felon-in-possession statute itself was not a predicate offense under the ACCA. For example, in an opinion authored by then-Chief Judge Breyer, the First Circuit provided the following in-depth reasoning in excluding the felon-in-possession offense from the definition of violent felonies under the ACCA, which would appear to apply with equal force to possession of a sawed-off shotgun:

> Several considerations ultimately convince us that this language does not cover the felon-in-possession crime. First, simple possession of a firearm does not fit easily within the literal language of the statute. The statute gives several specific examples — burglary, arson, extortion, use of explosives — and then adds, "or otherwise involves conduct that presents a serious potential risk of physical injury to another." One can easily imagine a significant likelihood that physical harm will often accompany the very conduct that normally constitutes, say, burglary or arson. It is much harder, however, to imagine such a risk of physical harm often accompanying the conduct that normally constitutes firearm possession, for simple possession, even by a felon, takes place in a variety of ways (e.g., in a closet, in a storeroom, in a car, in a pocket) many, perhaps most, of which do not involve likely accompanying violence.

> Second, to read the statute less narrowly, in order to cover firearm possession, would also bring within the statute's scope a host of other crimes that do not seem to belong there. To include possession, one would have to focus upon the risk of direct future harm that present conduct poses. But, how could one then exclude, say, drunken driving or unlawful transportation of hazardous chemicals or other risk-creating crimes very unlike the burglary, arson, extortion, and explosives use that the statute mentions? There is no reason to believe that Congress meant to enhance sentences based on, say, proof of drunken driving convictions. Rather, we must read the definition in light of the term to be defined, "violent felony," which calls to mind a tradition of crimes that involve the possibility of more closely related, active violence.

*United States v. Doe*, 960 F.2d 221, 224-225 (1st Cir. 1992). According to Amos, the same rationale governs the crime of possession of a sawed-off shotgun, which like the felon-in-possession statute attempts to prevent future risks of violence, but does not itself apply to a crime that carries with it a risk of violence.

We believe that Amos has the better argument in light of the language of the statute. The crime of possessing a sawed-off shotgun is similar to the prohibition of felons possessing firearms, as both prohibit mere possession. As the *Doe* Court convincingly argued, possession does not fit

well with the more active crimes included in the statute. Further, our precedent requires us to consider the "least objectionable" conduct that would violate the statute. *See Maness*, 23 F.3d at 1008. Although many instances of sawed-off shotgun possession create a greater risk of harm to others, particularly if the weapon is fired or brandished, the same cannot be said for all instances of possession, such as where it is stored unloaded in an attic or the trunk of a car.

Two recent opinions in our circuit have employed similar reasoning in concluding that a prior conviction for a different offense involving weapons possession did not amount to a violent felony under section 924(e). *See United States v. Flores*, 477 F.3d 431 (6th Cir. 2007); *United States v. Alexander*, 2007 U.S. App. LEXIS 2964 (6th Cir. Feb. 9, 2007). Both cases involved the predicate offense of carrying a concealed weapon in violation of Michigan law, and determined that violations of this law did not involve a serious potential risk of physical injury to another.[2] The *Flores* panel noted that the crimes that are explicitly listed in section 924(e) "involve[] affirmative and active conduct that is not inherent in the crime of carrying a concealed weapon." 477 F.3d at 436. It also noted that Michigan actually allows individuals to carry concealed weapons, provided they maintain the proper license, rendering it difficult to conclude that the same conduct presents a serious risk of physical injury simply because it was done without a license. *Id*. at 438. Additionally, it found support for its conclusion in the treatment of the felon-in-possession statute, which other circuits had found not to be a violent felony under section 924(e), and which we had found to not amount to a crime of violence in a different context. *Id*. at 436-37 (citing *Orr v. Hawk*, 156 F.3d 651, 652 (6th Cir. 1998)). The *Alexander* panel relied on similar reasoning in reaching the same conclusion. *See* 2007 U.S. App. LEXIS 2964, at *10-13.

The rationale employed in these decisions similarly supports the conclusion that possession of a sawed-off shotgun does not constitute a violent felony. Carrying a concealed weapon comes closer to presenting a risk of physical injury to another as the gun must be on the defendant's person, unlike possession of a sawed-off shotgun, a crime of which a defendant can be convicted for keeping an unloaded weapon locked or hidden in his attic or basement. As the *Alexander* and *Flores* panels pointed out, if possession of a sawed-off shotgun were so dangerous in all instances in and of itself, federal law would prohibit the weapons altogether, rather than allowing their possession if they are registered. We disagree with those circuits that have concluded that the registration requirement answers this question. After all, registration is clearly less of a limitation on possession than the full prohibition that applies to felons who would seek to possess any firearm, and the felon in possession statute has been rejected as a predicate felony under ACCA. *See Doe,* 960 F.2d at 224-225. Nor are we convinced that the potential for future dangerousness or the lack of a legitimate use for sawed-off shotguns that other circuits have pointed to renders their possession a violent felony. As with any gun, shooting a sawed-off shotgun can obviously create a serious risk of physical harm to another, but the same can hardly be said for their mere possession.

All of our nation's gun control laws are serious and are intended to promote the safety of our citizenry. We therefore in no way make light of the sentencing implications of criminal violations for gun possession by referring to the conduct in question as "mere possession." Nevertheless, as *Flores* and *Alexander* instruct us, the important goals behind statutes directed at gun possession do not automatically convert violations of their requirements into "crimes of violence." Further, if Congress had wanted the ACCA to cover offenses for possession of firearms as predicate offenses, it could easily have done so explicitly (i.e., the definition of violent felony could have included "possession of a firearm in violation of state or federal law"). Although we consider this a close

---

[2] Both *Alexander* and *Flores* provide thorough reasoning with regard to the violent felony analysis. *Alexander* affirmed the ACCA enhancement, despite concluding that possession of a concealed weapon is not a violent felony, because the defendant did not object to the enhancement at sentencing, and under the deferential plain error standard of review and the lack of existing precedent on the issue, the district court's contrary conclusion was not plain error. Because *Flores* is a published opinion and did not involve plain error, we rely upon its holding primarily.

question in light of the reasoning of our sister circuits, the plain language of the statute evinces an intent to include only offenses with more assertive, violent conduct than mere possession, just like the felon-in-possession statute addressed in *Doe*.

We agree with the district court's conclusion that a prior conviction for possession of a sawed-off shotgun does not amount to a violent felony under section 924(e), and **AFFIRM** its decision accordingly.

---

**CONCURRING IN THE JUDGMENT**

---

ALICE M. BATCHELDER, Circuit Judge, concurring. I concur in the majority's judgment and reasoning, and write separately merely to note an additional basis for my concurrence. In a case that post-dates most of the precedent relied upon by our sister circuits, *Leocal v. Ashcroft*, the Supreme Court concluded that driving under the influence is not a crime of violence, reasoning:

> In construing both parts of [18 U.S.C.] § 16, we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.' The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses. *Cf. United States v. Doe*, 960 F.2d 221, 225 (C.A.1 1992) (Breyer, C.J.) (observing that the term 'violent felony' in 18 U.S.C. § 924(e) 'calls to mind a tradition of crimes that involve the possibility of more closely related, active violence'). Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes.

*Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004).

I recognize, as does the lead opinion, that 18 U.S.C. § 16 — the statute construed in *Leocal* — is not identical to the statute at issue here. But if we ignore for a moment the weight of our sister circuits' precedent, which fortifies the government's position, and instead consider anew the reasoning behind that precedent — as the Supreme Court will do when faced with this issue — it is clear that the same arguments against possession of a sawed-off shotgun could be applied to driving under the influence. In fact, it appears likely that the act of driving under the influence would be more likely to "involve[] conduct that presents a serious potential risk of physical injury to another," than would the mere possession of a sawed-off shotgun. *See Leocal*, 543 U.S. at 11 (DUI is not a crime of violence); *see also United States v. Fish*, 368 F.3d 1200 (9th Cir. 2004) (possession of a pipe bomb is not a crime of violence); *United States v. Oliver*, 20 F.3d 415 (11th Cir. 1994) (possession of explosives is not a violent felony).

---------------

**DISSENT**

---------------

McKEAGUE, Circuit Judge, dissenting. Congress has concluded that, as a matter of national policy, the possession of a sawed-off shotgun is inherently dangerous conduct. A defendant's unlawful possession of this type of weapon constitutes, in my opinion, "conduct that presents a serious potential risk of physical injury to another" under the Armed Career Criminal Act (the "ACCA"). 18 U.S.C. § 924(e)(2)(B)(ii). The United States Sentencing Commission (the "Commission") has similarly concluded, as have six of our sister circuits. Carrying a concealed-firearm is markedly different conduct, as that conduct can have several peaceful and beneficial aspects. Accordingly, I am not persuaded by the majority's reliance on *United States v. Flores*, 477 F.3d 431, 435-36 (6th Cir. 2007), a concealed-firearm case. Nor am I persuaded by the concurring opinion's discussion of *Leocal v. Ashcroft*, 543 U.S. 1 (2004), a drunk-driving case brought under an unrelated statute. For these reasons, I respectfully dissent.

Under the National Firearms Act, Act of June 26, 1934, Ch. 757, 48 Stat. 1236 (codified at 26 U.S.C. §§ 5801-5872), Congress placed strict controls over the manufacture and transfer of all sawed-off shotguns, machineguns, silencers, grenades, and other "gangster-type weapons." Conf. Rep. 90-1956, 1968 U.S.C.C.A.N. 4426, at 4434. It did so because of its "specific declaration and finding that" these and other "destructive devices (such as bazookas, mortars, antitank guns, bombs, missiles, etc.,) . . . are primarily weapons of war and have no appropriate sporting use or use for personal protection." *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (quoting S. Rep. No. 90-1501, at 28 (1968)). While handguns and other generic firearms are not subject to the Act's stringent controls, those weapons that Congress has deemed especially dangerous—including sawed-off shotguns—are subject to the Act. *United States v. Brazeau*, 237 F.3d 842, 845 (7th Cir. 2001) ("The point is that most firearms do not have to be registered—only those that Congress found to be inherently dangerous.").

It *should* go without saying that unlawfully possessing one of these "gangster-type" "weapons of war" creates a serious potential risk of physical injury. In comparison to a regular shotgun, a sawed-off shotgun is generally less, not more, accurate and has a lower range—both of which are presumably considered drawbacks by most gun enthusiasts. However, what it lacks in accuracy and range, it more than makes up for in concealment and maneuverability. With its shorter barrel, a sawed-off shotgun can be concealed under a large shirt or coat. It is the combination of low, somewhat indiscriminate accuracy, large destructive power, and the ability to conceal that makes a sawed-off shotgun useful for only violence against another person, rather than, for example, against sport game.

The potential risk for physical injury is magnified when a person *unlawfully* possesses a sawed-off shotgun or another one of these weapons. By doing so, that person has evinced an obvious disregard for federal and, in some cases, state law (here, Tennessee)—never a good sign when that disregard is manifested by the act of possessing a "gangster-type weapon."

Other authorities have arrived at the same conclusion. In interpreting a "crime of violence" under U.S.S.G. § 4B1.2 (which is nearly identical to the ACCA's definition of "violent felony"), the Commission explained, "Unlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a 'crime of violence.'" U.S.S.G. § 4B1.2 cmt. n.1. I agree with the First Circuit's statement in *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992), that courts should give considerable weight to the views of the Commission in this context: "The Commission, which collects detailed sentencing data on virtually every federal criminal case, is better able than any individual court to make an informed judgment

about the relation between" a particular activity "and the likelihood of accompanying violence." *See also Stinson v. United States*, 508 U.S. 36, 38 (1993) (Guidelines commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). How a subsequent panel of this court will square the circle created by the majority's interpretation of the ACCA against the Commission's commentary to § 4B1.2 remains to be seen.

Likewise, as the majority notes, six of our sister circuits have concluded that possession of a sawed-off shotgun constitutes either a violent felony under the ACCA or a crime of violence under the Guidelines. As the Ninth Circuit explained in *United States v. Hayes*, 7 F.3d 144, 145 (9th Cir. 1993), "sawed-off shotguns are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force." To my knowledge, none of the other circuits have held otherwise.

The majority attempts to counter these considerations. First, following the First Circuit, the majority contends that "possession does not fit well with the more active crimes included in the statute." Maj. Op. at 5. Yet, that court has since rejected this rationale in the context of the inherently dangerous weapons identified by Congress in § 26 U.S.C. § 5845(a). In *United States v. Fortes*, 133 F.3d 157, 162 (1st Cir. 1998), the First Circuit recognized a "reasonable—indeed very substantial—difference between possession of a generic 'firearm' and possession of one of the specialized weapons singled-out for particularized treatment" by Congress. The court found that for the latter category of weapons, mere possession "involved a blatant disregard for the law and a substantial risk of improper physical force." *Id*. at 163 (quoting *United States v. Huffhines*, 967 F.2d 314, 321 (9th Cir. 1992)). I agree—when the weapon possessed is extremely dangerous with few, if any, defensive or sporting uses, I would find that mere possession of it creates a serious potential risk of injury.

The majority also relies upon *United States v. Maness*, 23 F.3d 1006, 1008 (6th Cir. 1994), for the proposition that we must consider the "least objectionable conduct" that would violate the statute. I do not read the holding in *Maness* nearly that broadly. Under the categorical approach required by *Taylor v. United States*, 495 U.S. 575, 600 (1990), we cannot consider all of the myriad facts and circumstances of an underlying conviction, but only the statutory definitions of the prior offenses and other limited matters. *See Shepard v. United States*, 544 U.S. 13, 16 (2005) (explaining that, under *Taylor*, "a later court determining the character of a [prior crime for purposes of the ACCA] is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"). Thus, it should be completely irrelevant for our purposes whether someone possessed a sawed-off shotgun for the presumptively benign purpose of displaying it in his living room. *Cf. Maness*, 23 F.3d at 1010 (Ryan, J., concurring). In any event, where Congress has explicitly identified a class of weapons as inherently dangerous, I do not see the import of the fact that those weapons could, in some circumstances, have non-violent uses. Just as one could possess a sawed-off shotgun as a family heirloom or use it to fend off groundhogs, Maj. Op. at 3, one could use a grenade launcher to shoo away a pesky woodpecker, possess a silencer as a paperweight, or use a blackjack to crack open walnuts. Such secondary uses do not detract from the fact that these devices are primarily designed for dangerous, criminal or war-like purposes. *See, e.g.*, *United States v. Canon*, 993 F.2d 1439, 1441 (9th Cir. 1993) ("Because possession of a sap [a.k.a., a blackjack or bludgeon] is 'presumptive evidence of unlawful violent intentions' and necessarily entails a 'serious potential risk of physical injury to another,' this felony conviction also qualifies" under the ACCA); *Huffhines*, 967 F.2d at 321 ("Like a sawed-off shotgun and other firearms of the kind enumerated in [§ 5845(a)], a silencer is practically of no use except for a criminal purpose.").

Finally, the majority draws support from *Flores*, 477 F.3d at 435-36, where the court held that carrying a concealed weapon in violation of Michigan law is not a violent felony under the

ACCA. *Flores* and similar decisions outside the circuit are, however, distinguishable. First and foremost, Congress has not deemed it necessary to place stringent restrictions on the possession of all handguns and other firearms. While some states have gone farther than Congress in this regard, other states have not. Thus, unlike with sawed-off shotguns and the other weapons identified in § 5845(a), there is no national consensus (as voiced by Congress) that all handguns and other firearms are inherently dangerous. Ordinary citizens cannot get carry permits for sawed-off shotguns, machineguns, or grenades in most jurisdictions. *See, e.g.*, M.C.L. §§ 750.224(1)(a), 750.224b(1) (Michigan); T.C. §§ 39-17-1302, 39-17-1307 (Tennessee).

Likewise, the Commission and other circuits have distinguished between convictions involving possession of a generic firearm and convictions for possession of weapons identified in § 5845(a). The former do not count as crimes of violence or violent felonies, while the latter do. *Compare Doe*, 960 F.2d at 225 (First Circuit, holding that possession of a firearm by a felon was not a violent felony under the ACCA), *with Fortes*, 133 F.3d at 163 (First Circuit, holding that possession of a sawed-off shotgun was a violent felony under the ACCA); *see also* U.S.S.G. § 4B1.2 cmt. n.1 ("'Crime of violence' does not include the offense of unlawful possession of a firearm by a felon, unless the possession was of a firearm described in 26 U.S.C. § 5845(a)."); *United States v. Allegree*, 175 F.3d 648, 651 (8th Cir. 1999) ("The reason [the defendant's] conviction for possession of [a sawed-off shotgun] counts as a crime of violence is because of the type of weapon involved. This distinguishes his offense from simple possession of a firearm by a felon.").

The concurring opinion's discussion of *Leocal* is equally unconvincing. The Supreme Court in *Leocal* held that a conviction for driving under the influence (a "DUI") was not a "crime of violence" under 18 U.S.C. § 16. 543 U.S. at 10. As the Court explained, and the concurring opinion recognizes, § 16 differs from both the ACCA and the U.S.S.G. § 4B1.2. The Court discussed at length the meaning and importance of the word "use" in § 16(a), and the phrase "may be used in the course of committing the offense" in § 16(b), neither of which appear in the ACCA or U.S.S.G. A DUI, the Court held, did not fall under § 16(a) because "[t]he key phrase in § 16(a)—the 'use . . . of physical force against the person or property of another'—most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal*, 543 U.S. at 9. And it did not fall under § 16(b) because "[t]he reckless disregard in § 16[b] relates not to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime." *Id*. at 10 (emphasis in original). The concurring opinion may be correct that the same reasoning might be applied to possession of a sawed-off shotgun to achieve the same result under § 16, but a different analysis is clearly required under either the ACCA or the Guidelines, as the Court itself alluded to:

> 16(b) plainly does not encompass all offenses which create a "substantial risk" that injury will result from a person's conduct. The "substantial risk" in § 16(b) relates to the use of force, not to the possible effect of a person's conduct. Compare § 16(b) (requiring a "substantial risk that physical force against the person or property of another may be used") with United States Sentencing Commission, Guidelines Manual § 4B1.2(a)(2) (Nov. 2003) (in the context of a career-offender sentencing enhancement, defining "crime of violence" as meaning, *inter alia*, "conduct that presents a serious potential risk of physical injury to another"). The risk that an accident may occur when an individual drives while intoxicated is simply not the same thing as the risk that the individual may "use" physical force against another in committing the DUI offense.

*Id*. at 10 n.7. Given the differences in language between § 16 and the ACCA, I find the analysis of *Leocal* inapplicable to the present case.

In sum, certain weapons are so dangerous and offer so little in terms of protection or sport that the mere possession of them "presents a serious potential risk of physical injury to others." As Congress, the Commission, and several of our sister circuits have concluded, sawed-off shotguns fall into that category. I agree with these authorities, and, therefore, respectfully dissent.